Stephen R. Brown
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Telephone (406) 523-2500
Telefax (406) 523-2595
srbrown@garlington.com

Attorneys for Flathead Properties, LLC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| JOLENE DUGAN and FLATHEAD PROPERTIES, LLC,<br><br>     Plaintiffs,<br><br>  v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS,<br><br>     Defendant. | _____<br><br><br>COMPLAINT |

For their Complaint seeking declaratory and injunctive relief against the

United States Army Corps of Engineers (the "Corps"), Plaintiffs Jolene Dugan

("Dugan") and Flathead Properties, LLC ("Flathead") (collectively, "Plaintiffs")

allege as follows:

//

# INTRODUCTION

1.      Plaintiffs bring this action for injunctive and declaratory relief under the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*

2.      The Corps has issued a cease and desist letter to Plaintiffs purporting to be based upon the Corps' determination that all or a portion of properties owned by Plaintiffs is subject to the CWA, and that Plaintiffs have illegally placed fill material on their properties.  Prior to issuing the cease and desist letter, the Corps failed to make a proper determination of jurisdiction.

3.      As a result of the Corps' unlawful assertion of jurisdiction, Plaintiffs are unable to use their properties without fear of a CWA enforcement action, fines, and penalties.  The Corps' improper assertion of jurisdiction, and arbitrary refusal to acknowledge that Plaintiffs qualify for various permit exceptions and nationwide permit authorizations also subjects Plaintiffs to unlawful and burdensome permitting requirements.

4.      Plaintiffs seeks a declaration that the cease and desist letter was issued without jurisdiction.  Plaintiffs further seek to enjoin the Corps from enforcing the cease and desist letter and otherwise exercising jurisdiction over Plaintiffs' properties.

5.      The Court's review of the agency action that is the subject of this

proceeding is based upon the administrative record before the Corps at the time the Corps made its decisions.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); § 2201 (authorizing declaratory relief); § 2202 (authorizing injunctive relief); and 5 U.S.C. § 702 (providing for judicial review of agency action under the APA).

7.      Venue is proper under 28 U.S.C. § 1391(e)(1)(B), because the property that is the subject of this action is situated in Flathead County, Montana, which is within this district.

## PARTIES

8.      Dugan owns real properties in Flathead County, Montana, including properties described as (a) Tract 2ABC of Certificate of Survey No. 19916-A in the West1/2, NE 1/4, Section 35, Township 27 North, Range 20 West; (b) Tract 2ABC of Certificate of Survey No. 19916-B in the West1/2, NE 1/4, Section 35, Township 27 North, Range 20 West; and (c) Tract 2A of Certificate of Survey No. 19584-5 in the NW1/4, NE 1/4 and Lot 2, Section 35, Township 27 North, Range 20 West (the "Dugan Parcels").

9.      Flathead owns real property in Flathead County, Montana described as Tract 2ABB of Certificate of Survey No. 19584-3 in the NW1/4, NE 1/4,

Section 35, Township 27 North, Range 20 West (the "Flathead Parcel").

10.     The United States Army Corps of Engineers is a branch of the Department of Army and is charged with implementing the Section 404 of the CWA, 33 U.S.C. § 1344.

## LEGAL BACKGROUND

11.     In 1972, the United States Congress enacted the current form of the CWA to, among other things regulate the "navigable waters" of the United States.

12.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the unpermitted discharge of dredged and fill material into "navigable waters."

13.     Section 404 of the CWA, 33 U.S.C. § 1344, authorizes the issuance of permits for the discharge of dredged or fill material into the "navigable waters" of the United States.

14.     Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" to mean the "waters of the United States, including the territorial seas."

15.     By regulation, the Corps may determine whether a particular parcel of property contains "waters of the United States" by issuing an Approved Jurisdictional Determination ("JD").  33 C.F.R. §§320.1(a)(6), 331.2.

16.     The Corps has promulgated regulations defining "waters of the United States."  33 C.F.R. §328.  Under those regulations, navigable waters, interstate waters, intrastate waters with uses that could affect interstate or foreign commerce,

impoundments of waters, tributaries of waters, territorial seas, and wetlands adjacent to other waters that are not themselves wetlands, are considered "waters of the United States."  33 C.F.R. § 328.

17.     Prior to asserting jurisdiction over a parcel of property, the Corps rules and procedures call for it to make a "jurisdictional determination" of the status of the property.  33 C.F.R. § 331.2 and pt. 331, App. C.

18.     It often is difficult to determine whether a particular piece of property contains waters of the United States, but there are important consequences if it does.  The Clean Water Act potentially imposes significant penalties for discharges without a permit.  The cost of obtaining a permit is extremely significant, often exceeding hundreds of thousands of dollars.

19.     The Corps determines whether particular property contains "waters of the United States" the Corps conducts a "jurisdictional determination" on a case-by-case basis.

## FACTUAL ALLEGATIONS

20.     Each of the Dugan Parcels and the Flathead Parcel currently are undeveloped.  Both properties about Flathead Lake on their south side and a Flathead County road on their north side.  The properties are situated west of the town of Bigfork, Montana.

21.     Flathead Lake is a natural lake with a lake level that fluctuates

artificially as a result of the operation of Kerr Dam, beginning in the early 1940s. Kerr Dam is located on the lower Flathead River, approximately five miles south of Polson, Montana.

22.    Kerr Dam regulates the water level of Flathead Lake, which is fed by snowmelt, releases from Hungry Horse Dam, a federal controlled dam on the South Fork of the Flathead River, other forks of the Flathead River, and various smaller tributary streams.  Prior to the dam's existence, the surface of Flathead Lake generally rose several feet from mid-April to early June due to spring runoff. After reaching its highest point, generally in June, the lake level would decrease naturally by mid-summer.

23.    Kerr Dam altered this natural process and caused the lake to rise to a point several feet higher than its natural level and to maintain this artificially high level throughout the spring, summer, and into the fall.

24.    The shoreline of Flathead Lake, including the shoreline fronting Plaintiffs' properties, has continuously been eroded and damaged by the operation of Kerr Dam, a fact that the Corps has known for many years.  The erosion has been exacerbated by the practice of keeping the lake level artificially high during the fall storm season.

25.    The combined effect of artificially high water and extensive shoreline erosion has caused some of Plaintiffs' properties to become abnormally wet.

However, because this condition has been occurring for only 70 years, the soils have not developed into soils that meet the criteria for hydric or anaerobic soils, which take several hundred years or more to create.

26.     Plaintiffs' properties are located in an area of Flathead Lake that has been highly impacted by the artificial operations of Kerr Dam and the reservoir component of Flathead Lake.  Their properties do not meet the criterion to be classified as jurisdictional because they do not contain the three elements necessary to be classified as a jurisdictional wetland according to the definitions set forth in the CWA and the Corps' guidance.  Specifically, if any <u>one</u> of the three criteria – (1) hydric soils, (2) hydrology, or (3) the presence of hydrophytic vegetation – are absent, then the site is <u>not</u> considered jurisdictional.  As to Plaintiffs' properties <u>none</u> of the three criteria were met during the time that the Corps asserted jurisdiction.

27.     The soils component of Plaintiffs' properties does not meet wetland criteria because the soils are not hydric or anaerobic.  During the past several thousand years this site has been a dry upland with a ponderosa pine forest cover, as depicted in periodic Forest Service aerial photographs, up to the time Kerr Dam raised the level of the lake.

28.     The hydrology of Plaintiffs' properties does not constitute "normal circumstances."  Kerr dam caused extensive lakeshore erosion that resulted in over

a 1,000 feet of shoreline recession and erosion on the north end of the lake; none of the erosion was expected or agreed to by Plaintiffs.  The erosion was not authorized by flood easements for Kerr Dam, which has caused hydrologic conditions that are not normal circumstances.  Further, there is no surface or shallow subsurface water connection to Flathead Lake, which is required for a determination that the property is jurisdictional.  In fact, the courts in Montana have ruled that the erosion is to such an extent as to be actionable in court.

29.    If the artificially created site hydrology returned to normal, the site would revert back to a dry upland site.  The site would be much drier because water from storm surges along the artificial shore would be eliminated, and the influence of elevated groundwater pressures in bedrock under the site would be reduced.  As the properties become drier, all hydrophytic vegetation would disappear from the site.

30.    Dugan's property includes certain land that is now an island after the extensive erosion over the last few decades caused by the controlled reservoir portion of Flathead Lake at full pool.  When the operators of Kerr Dam drop the lake to its natural level, the island is connected to the mainland.

31.    To gain access to a portion of her property that now is an island, Dugan has constructed a bridge across the portion of the lakebed that is periodically inundated by the operation of Kerr Dam.  In order to avoid impacts to

Flathead Lake, the bridge was constructed using pilings in the lakebed.  This method of construction was approved by the Corps in February 2010.

32.    Prior to initiating construction, Dugan obtained all local permits necessary to initiate construction.  Specifically, on March 16, 2011, Dugan obtained a permit from Flathead County (Permit No. FLP-11-02) to engage in a construction project that involves the shoreline.  As part of these permits, Dugan agreed to various mitigation measures, including the elimination of all tire track rutting on the lakebed above the waterline that might be caused by construction equipment.  To comply with this requirement, Dugan used plywood mats manufactured by a company in Montana that are specifically engineered to prevent rutting from heavy equipment.  The Corps regularly has approved the use of such matting at other sites throughout the country as a mechanism to protect sensitive areas.

33.    Dugan used the matting for a 30-day period from April 23, 2015 to May 22, 2015 while the lakebed was dry.  The mats were removed on May 22, 2015, before the water level was raised.  The mats did not and do not constitute the discharge of fill material into a navigable water.  If the wood mats had been left on the dry lake bottom, they would have floated away when the water rose.

34.    On May 11, 2015, the Corps sent Plaintiffs a letter captioned "Notice of Violation – Cease and Desist – Flathead Lake and Wetlands."  The letter alleged

that "earthen or gravel fill, and structural matting material acting as fill, was placed in Flathead Lake and adjacent wetlands."  The letter also alleged that the action "appears to be associated with the construction of a bridge and road to an island in Flathead Lake."

35.     On May 21, 2015, the Corps sent a second letter stating that the "planking material" had been "relocated on the lake bed" and that the use of planking material "is placement of fill material in waters of the U.S. and requires Corps authorization prior to placement."  The May 11, 2015 letter and the May 21, 2015 letter requested that Plaintiffs provide certain information to the Corps.

36.     Following receipt of these letters, Plaintiffs, through their legal counsel, communicated with the Corps by telephone.  During this telephone conversation, Plaintiffs informed the Corps that they had no objection to the Corps performing a site visit to inspect the alleged violations.  During this conversation, Plaintiffs explained to the Corps that the matting was temporary in nature, not structural, placed solely as a mitigation measure to comply with Flathead County permit stipulations, and were removed on May 22, 2015, before the lake level rose and inundated the area.

37.     During this conversation, the Corps stated to Plaintiffs that the Corps had issued a "regulatory guidance letter" that addressed the use of temporary planking as a lakebed protection measure and that the Corps would provide the

letter.  In a follow-up conversation that occurred on May 29, 2015, the Corps

notified Plaintiffs that there actually was no regulatory guidance letter that

addressed the placement of temporary planking.

38.     On June 1, 2015, Plaintiffs wrote a letter to the Corps addressing all of

the issues that the Corps asked about in its correspondence.

39.     On June 3, 2015, the Corps wrote a letter to Plaintiffs and stated that

"[s]tructural planking material . . . is fill material as defined in 33 CFR 323.2(e)."

40.     The Corps also performed a site visit on July 27, 2015, and was able

to view the work and the lakebed protection that the panels provided.

41.     On August 11, 2015, the Corps wrote Plaintiffs another letter, which

confirmed that "removal of temporary planking from the lake bed has been

accomplished."  However, the letter went on to state that over 0.03 acres of

"abutting wetlands to Flathead Lake" associated with an access road on the

Flathead Tract had not been addressed.

42.     On September 25, 2015, Plaintiffs wrote a letter to the Corps that

provided a narrative explanation about why the 0.03 acre area that the Corps

contended was illegally filled on the Flathead Tract was not a jurisdictional

wetland.  The letter was accompanied by the second of two major studies that were

performed on the property between September 2013 and September 2015 by

Randy Overton of Water Source, LLC, one of the most experienced and respected

hydrogeologists in Montana.  The two studies cost more than $100,000 and contain more than 300 pages of analysis, including 49 soil and groundwater monitoring logs collected over two years.  The reports unquestionably provide the technical information necessary to establish that the Corps lacks jurisdiction over the area it contends contains fill placed without the requisite permits.  This report and the information in the letter, along with all of the information provided in the Corps recent site visit, provided the Corps with all information necessary to perform a jurisdictional determination.

43.     On October 7, 2015, Dugan notified the Corps that she planned to construct an approach driveway on the Dugan Tract.  The letter provided the dimensions and the location of the road.  It also explained that the location was not a jurisdictional wetland for the reasons set out in the report that had been submitted.  The letter also stated that even if it were jurisdictional, which it is not, the driveway met the minimum standards under Nationwide Permit Authorization No. 14.  The letter also provided support that work on the properties qualified under Nationwide Permit Authorization No. 5.

44.     By late November 2015, Plaintiffs had heard nothing from the Corps. In effort to receive confirmation of jurisdictional status, on November 23, 2015, Plaintiffs wrote the Corps a letter asking for a response to the request for a jurisdictional determination.

45.     On November 25, 2015, the Corps finally responded to the jurisdictional information that Plaintiffs had provided.  The summary of the responses from the Corps with respect to jurisdiction is stated in the following three separate letters from the Corps:  dated May 11, 2015 ("Review of available information indicates that waters of the United States are present"); May 21, 2015 ("This letter concerns possible continued work in Flathead Lake and adjacent wetlands that is occurring in waters of the U.S."); and November 25, 2015 ("the Corps has reviewed and considered the additional information and your letters.  The areas in question are adjacent to Flathead Lake, are waters of the United States.").  In all of the correspondence with the Corps regarding jurisdictional determinations of the properties, the Corps always has been unequivocal in its statements that the wetlands are jurisdictional.

46.     Even though the Corps never has shared the information, the Corps must have conducted a jurisdictional determination, otherwise it would not have had a basis for the statement that the areas in question are jurisdictional wetlands.

47.     On January 4, 2016, Plaintiffs wrote the Corps expressing frustration with the lack of analysis in the Corps' jurisdictional conclusion and stating their assumption that this statement constituted a final jurisdictional determination.

48.     The Corps did not dispute, or respond in any way to the January 4, 2016 letter.  Therefore, on January 21, 2016, Plaintiffs filed a Notification of

Administrative Appeal with the Division Engineer for the Corps.

49.     On February 5, 2016, the Northwestern Division of the Corps provided a response to the appeal.  Even though the Corps had unequivocally stated in its November 25, 2015 letter that the areas in question were jurisdictional wetlands, the appeal did not meet the criteria for an "appealable action."

50.     After receiving this letter, on February 19, 2016, Plaintiffs submitted a preconstruction notice seeking authorization for preparation of a single-family residence under Nationwide Permit no. 29.  The letter referenced the previous jurisdictional information that had been provided to the Corps, as well as the Corps' specific recommendation in the November 25, 2015 letter that Plaintiffs proceed under nationwide permits.

51.     During the Spring of 2016, Plaintiffs contacted the Corps and requested a meeting to discuss the open items.  The meeting was initially scheduled, but then the Corps abruptly canceled it and refused requests to reschedule.

52.     On April 7, 2016, the Corps sent a letter denying the nationwide permit application on the grounds of the allegedly unresolved cease and desist letter.

53.     The Corps' assertions of jurisdiction on Plaintiffs properties has been ongoing for more than 15 years.  For example, in 2004-2005, Flathead submitted a

permit application to the Corps, but the Corps refused to act on the application.  At
no time has the Corps ever made a jurisdictional determination of the properties
even though the Corps has visited the properties on numerous occasions and has
been provided extensive technical information.

## FIRST CLAIM FOR RELIEF
### (Injunction)

54.     Plaintiffs re-allege all prior paragraphs.

55.     If a permanent injunction does not issue enjoining the Corps from
continuing to take the position that the cease and desist letter is unresolved,
Plaintiffs will be irreparably harmed.  Plaintiffs are currently and continuously
injured by the issuance of the cease and desist letter because its issuance and the
coincident threat of enforcement has forced and will continue to force Plaintiffs to
alter their long standing plans for their properties and subject them to severe
restrictions on the use of their land.  Specifically, as a result of the cease and desist
letter, and its threat of enforcement, Plaintiffs have suffered and will continue to
suffer a diminution in the available uses of that land.  Plaintiffs' properties have
already lost value because of the cease and desist and its threat of enforcement,
which loss will continue.  As a result of the uncertainty caused by the Corps'
arbitrary positions, lack of responsiveness, and failures to act, Plaintiffs also face
very high financing costs because of all the uncertainty of the Corps' claim of

jurisdictional wetlands and the many years of no resolution, or appropriate avenues of resolution.

56.     Flathead have no plain, speedy, and adequate remedy at law.

57.     If not enjoined by this Court, the Corps will continue to enforce, and threaten to enforce, the cease and desist letter, in derogation of Flathead' rights.

58.     Accordingly, injunctive relief is appropriate

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

59.     Plaintiffs re-allege all prior paragraphs.

60.     An actual and substantial controversy exists between Flathead and the Corps over the latter's failure to comply with the CWA and the APA in determining that Flathead's property is subject to the CWA.

61.     Plaintiffs are entitled to a determination that no legal basis for the cease and desist letter exists because the protective planking that Plaintiffs placed on the non-inundated bed of Flathead Lake in May 2015 (a) was not fill material under any construction of that term, and (b) was removed a year ago, immediately after receiving notice.  Yet the Corps has failed to either document a legal basis for the cease and desist, or acknowledge that the planking was removed before the lake was inundated in May 2015.

62.     Plaintiffs are further entitled to a declaratory judgment that the Corps

has wrongfully failed to either issue a jurisdictional determination, or provide any other legal basis for the conclusion that the area above the Flathead Lake high water mark is jurisdictional.

63.     This case is currently justiciable because of the Corps' failure to respond to the extensive studies that were provided to the detailed jurisdictional information developed at great expense by Plaintiffs and otherwise comply with these laws is the direct result of final agency action that has caused and will continue to cause immediate and concrete injury to Plaintiffs.  Plaintiffs are currently and continuously injured by the issuance of the cease and desist, and the failure to withdraw the cease and desist, because its issuance and coincident threat of enforcement has forced and will continue to force Plaintiffs to alter their land management practices and subject them to severe restrictions on the use of their land.  Specifically, as a result of the cease and desist and its threat of enforcement, Flathead have suffered and will continue to suffer a diminution in the available uses of that land.  Flathead's property has already lost significant value because of the cease and desist and its threat of enforcement, which loss will continue.

64.     Declaratory relief is, therefore, appropriate to resolve this controversy.

## CLAIM FOR RELIEF
### (Violation of Administrative Procedure Act, 5 U.S.C. § 706(2))

65.     Plaintiffs re-allege all prior paragraphs.

66.     Flathead's property is not subject to the CWA because Plaintiffs' properties contain no "water of the United States."  Plaintiffs' properties do not substantially affect, either by itself or in combination with similarly situated properties in the area, the physical, chemical, and biological integrity of any traditional navigable waters, and it is not connected to any other body of water such that one cannot discern where that body of water ends and the property begins.

67.     The Corps' continue reliance on correspondence that Plaintiffs' properties are subject to the CWA—is therefore arbitrary and capricious, and contrary to law.  *See* 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

1.     A declaration that Plaintiffs' properties are not subject to the CWA and that the May 11, 2015 cease and desist letter is null and void.

2.     A declaration that continued reliance on the May 11, 2015 cease and desist letter is arbitrary, capricious, and contrary to law under the Administrative Procedure Act.

3.     An injunction enjoining the Corps from enforcing the May 11, 2015 cease and desist letter.

4.     For an award of attorney's fees, expenses, and costs; and,

5.      For other relief as the Court deems just and proper.

DATED this 21st day of June, 2016.


                          /s/  Stephen R. Brown
                  Attorneys for Plaintiff Flathead Properties, LLC